CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 12 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

SCHOOL BOARD OF ROANOKE COUNTY,

    Plaintiff,

v.

BRIAN GROSS, ELIZABETH GROSS, AND MELISSA WAUGH

    Defendants.

Civil Action No. 7:19cv232

## COMPLAINT FOR ATTORNEYS' FEES

The School Board of Roanoke County ("School Board") brings this action against Dr. Brian Gross and Mrs. Elizabeth Gross, parents of minor child M.G., and Melissa K. Waugh, Esq., to recover reasonable attorneys' fees, costs, and expenses incurred in the administrative due process hearing before the Virginia Department of Education ("VDOE") and filed under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*, ("IDEA"), which ended in favor of the School Board on all issues.

### I. INTRODUCTION

1. This action is brought to recover reasonable attorneys' fees, costs, and expenses incurred by the School Board in defending the IDEA administrative due process hearing ("due process hearing") initiated by Dr. and Mrs. Gross (or "Parents"), through counsel.

2. The IDEA at 20 U.S.C. § 1415(i)(3)(B)(i)(III) allows the Court to award reasonable attorneys' fees as part of costs "to a prevailing…local educational agency…against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of

action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation. 20 U.S.C. § 1415(i)(3)(B).

3. In addition, 20 U.S.C. § 1415(i)(3)(B)(i)(II) allows the Court to award attorneys' fees "against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation[.]". *Id.*

4. Dr. and Mrs. Gross initiated a due process hearing under the IDEA in order to challenge the determination that M.G., their straight-A student, who met or exceeded grade-level expectations, was not eligible for special education and related services.

5. Dr. and Mrs. Gross initiated the due process hearing in an attempt to secure M.G.'s placement at taxpayer expense at the North Cross School, a private, elite, college-preparatory school.

6. Dr. and Mrs. Gross initiated the due process hearing despite their agreement and written consent to the determination that M.G. was not eligible for special education and related services under the IDEA.

7. Dr. and Mrs. Gross initiated and litigated the due process hearing under the IDEA despite suffering a defeat in a previous administrative proceeding regarding M.G.'s eligibility under Section 504 of the Rehabilitation Act of 1973 ("Section 504"). In the previous Section 504 proceeding, Dr. and Mrs. Gross's case was dismissed on the School Board's motion to strike for failure to meet their burden of proof. *See* May 18, 2018 Decision, attached hereto as Exhibit 1.

8. Dr. and Mrs. Gross initiated and litigated the due process hearing despite the findings by a Section 504 administrative hearing officer and a Section 504 review officer that they had agreed with the School Board's eligibility determination under the IDEA. *See* August 26, 2018 Decision, attached hereto as Exhibit 2.

9. Dr. and Mrs. Gross engaged the School Board in a six-day IDEA special education hearing regarding their straight-A student, who met or exceeded grade-level expectations. *See* December 13, 2018 Decision, attached hereto as Exhibit 3.

10. The School Board incurred reasonable attorneys' fees, costs, and expenses in defending against Dr. and Mrs. Gross's frivolous and unfounded due process complaint.

## II. **PARTIES**

11. The School Board is a political subdivision of the Commonwealth of Virginia existing pursuant to the Constitution and statutes of Virginia and is vested with the authority to supervise the public schools within Roanoke County. Va. Const., Art. VIII, § 7; Va. Code § 22.1-71; *see generally* Title 22.1 of the Code of Virginia. The School Board office is located at 5937 Cove Road, Roanoke, Virginia 24019.

12. Dr. Brian Gross and Mrs. Elizabeth Gross are the parents of M.G. (or "Student"), who is a minor child. M.G. attended Oak Grove Elementary School within Roanoke County Public Schools from first grade until the beginning of the 2017-2018 school year, when Dr. and Mrs. Gross unilaterally withdrew M.G. from Roanoke County Public Schools and enrolled him at the North Cross School, a non-special education, college preparatory, private school. At all times pertinent hereto, M.G. resided with Brian and Elizabeth Gross in Roanoke County.

13. Melissa K. Waugh, Esq., (hereinafter, "Attorney Waugh") provided legal representation for Dr. and Mrs. Gross and M.G. from as early as August 25, 2017 to the present. Attorney Waugh joined the law firm of Belkowitz Law, PLLC in October, 2018.

## III. JURISDICTION AND VENUE

14. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this case raises federal questions under the IDEA. *See also* 20 U.S.C. § 1415(i)(3)(A).

15. Venue is proper pursuant to 28 U.S.C. § 1391(b).

16. The United States District Court for the Western District of Virginia, Roanoke Division is the proper Division pursuant to Rule 2(b) of the Local Rules for the Western District of Virginia.

## IV. STATEMENT OF THE FACTS

17. M.G. is an intelligent, hard-working fifth-grade student who formerly attended Oak Grove Elementary School in Roanoke County Public Schools.

18. M.G. began attending Oak Grove Elementary School as a first-grader in fall, 2014.

19. While attending Oak Grove Elementary School, M.G. made significant educational progress.

20. M.G. earned all As on his report cards in second and third grade during the 2015-2016 and 2016-2017 school years.

21. M.G. met and often exceeded grade level requirements and expectations.

22. M.G. was reading at or above grade level while attending Oak Grove Elementary School.

23. On August 22, 2016 at the beginning of M.G.'s third-grade year, the School Board convened an IDEA eligibility meeting at the request of Dr. and Mrs. Gross to determine if M.G. was eligible for special education and related services under the IDEA based on a private medical diagnosis of dyslexia.

24. The School Board convened M.G.'s IDEA eligibility meeting on August 22, 2016.

25. The August 22, 2016 IDEA eligibility meeting was collaborative and congenial.

26. Dr. and Mrs. Gross attended and participated in the August 22, 2016 IDEA eligibility meeting and were afforded the opportunity to ask questions.

27. On August 22, 2016, the eligibility team, which included Dr. and Mrs. Gross, determined that M.G. was not eligible for special education under the IDEA.

28. On August 22, 2016, both Dr. and Mrs. Gross provided written consent for the team's determination that M.G. was not eligible under the IDEA.

29. Dr. and Mrs. Gross are educated, native English speakers. Dr. Gross is a surgeon. Mrs. Gross is a former elementary-school teacher.

30. The eligibility forms utilized by the School Board contain a section titled, "Parental refusal of consent for eligibility or change is indicated by parental signature below." Dr. and Mrs. Gross did not sign the eligibility forms here to indicate that they disagreed with the determination of ineligibility.

31. The eligibility forms also contain a section which states, "List names and roles whose conclusion differs from other members' determination," and provides an opportunity for such individuals to attach a written statement. No member of the eligibility team, including Dr. or Mrs. Gross, signed in that section. No member of the eligibility team, including Dr. or Mrs. Gross, attached a written statement dissenting from the eligibility determination.

32. On November 29, 2016, at the request of Dr. and Mrs. Gross, the School Board convened a meeting to determine if M.G. was eligible for accommodations under Section 504. M.G. was found ineligible under Section 504.

33. Following an August 25, 2017 Child Study Team Meeting, Dr. and Mrs. Gross unilaterally withdrew M.G. from the school division and enrolled him in North Cross School.

## Section 504 Hearing

34. On November 21, 2017, Mrs. Gross, through her counsel, Attorney Waugh, filed a 23-page request for an impartial hearing under Section 504 of the Rehabilitation Act of 1973 ("Section 504") and pursuant to Roanoke County Public Schools' Administrative Guidelines and Procedures Governing the Implementation of Section 504 of the Rehabilitation Act of 1973 ("Administrative Guidelines").

35. The November 21, 2017 Section 504 complaint sought remedies unavailable under Section 504, including the payment of private school tuition at public expense for children other than M.G.

36. Attached to the Gross's Section 504 complaint was a psychological evaluation report completed by a Dr. Anthony Henley in late October 2017. By that time, Dr. and Mrs. Gross had already withdrawn M.G. from the public school division. Dr. and Mrs. Gross did not provide the School Board with Dr. Henley's report for the School Board's consideration prior to their withdrawal of M.G.

37. After receiving Dr. Henley's report, on December 26, 2017, the School Board proposed to conduct additional evaluations of M.G.

38. Mrs. Gross refused to provide consent for the School Board's proposed evaluations on the advice of Attorney Waugh.

39. On January 2, 2018, Hearing Officer Robinson ordered that the parties exchange proposed witness lists and exhibits for the Section 504 Hearing that was initiated on November 21, 2017. These exhibits and witness list were due by close of business on January 29, 2018.

40. On January 29, 2018 at 4:56 p.m., Attorney Waugh e-mailed counsel for the School Board indicating that she would not be meeting the deadline ordered by the Hearing Officer for the submission of exhibits.

41. On January 31, 2018, the Hearing Officer ordered that, due to Attorney Waugh's failure to meet the required deadline for the exchange of exhibits, Dr. and Mrs. Gross's exhibits would be excluded from introduction at the hearing.

42. During a pre-hearing conference call held on February 1, 2018, Hearing Officer Robinson ruled that because the Parents' exhibits were excluded from the hearing, the Parents' witnesses, Dr. Anthony Henley and Ms. Andrea Foutz, would not be permitted to testify at the hearing because their relevance as witnesses was limited to the reports they created.

43. On February 5, 2018, the parties began the first day of a Section 504 hearing, which spanned the course of five days, from February 5 to February 9, 2018.

44. Dr. and Mrs. Gross's case-in-chief alone stretched over the course of all five consecutive days of the hearing.

45. Mrs. Gross testified during the Section 504 hearing. Neither Mrs. Gross nor any other witness disputed that Dr. and Mrs. Gross provided written consent for the August 22, 2016 determination that M.G. was not eligible for special education under the IDEA.

46. At the conclusion of the Parents' case-in-chief, counsel for the School Board orally moved to strike the Parents' evidence on the grounds that the Parents had failed to meet their burden of proof.

47. On May 18, 2018, after considering the written briefs of both parties, and the hearing record, Hearing Officer Robinson granted the School Board's Motion to Strike and dismissed Dr. and Mrs. Gross' case. Specifically, the Hearing Officer found that the Parents

- 7 -
Case 7:19-cv-00232-EKD    Document 1    Filed 03/12/19    Page 7 of 13    Pageid#: 7

failed to prove that the School Board acted with "bad faith or gross misjudgment" with respect to M.G.

48. Hearing Officer Robinson's May 18, 2018 decision also explicitly found that, "The Parent agreed with the eligibility team's determination that [M.G.] did not qualify for special education and related services under the IDEA."

49. On June 19, 2018, the School Board received a Notice of Appeal of Hearing Officer Robinson's May 18, 2018 decision in favor of the School Board.

50. Pursuant to the Administrative Guidelines, Lorin Costanzo, Esquire ("Review Officer") was appointed to serve as the review officer to consider the appeal of Hearing Officer Robinson's decision.

51. On August 26, 2018, after reviewing written briefs submitted by both parties, the Review Officer issued a decision upholding Hearing Officer Robinson's May 18, 2018 decision.

## The IDEA Due Process Hearing

52. On August 22, 2018, Dr. and Mrs. Gross, through counsel, Attorney Waugh, requested a special education due process hearing under the IDEA, exactly two years after the date of the IDEA eligibility meeting.

53. The August 22, 2018 due process complaint challenged the School Board's August 22, 2016 determination that M.G. was not eligible for special education under the IDEA. The due process complaint also contained allegations of retaliation and of discrimination under the Americans with Disabilities Act ("ADA").

54. On August 24, 2018, Hearing Officer Robinson was again appointed to preside over the due process hearing.

55. On August 31, 2018, Mrs. Gross sent a letter to the School Board in which she stated that she and her husband are, "successful, well educated people," and that she is advocating for "all students and families in Roanoke County," "not just [her] own children."

56. Mrs. Gross previously expressed at a "Decoding Dyslexia" parent support group meeting that she and her family had the economic means to fight or combat the school division with respect to the educational programming of her children.

57. On September 4, 2018, counsel for the School Board sent Attorney Waugh a letter advising Attorney Waugh that Dr. and Mrs. Gross's claims were without merit. Counsel's September 4, 2018 letter advised Attorney Waugh of 20 U.S.C. § 1415(i)(3)(B)(i) and 34 C.F.R. § 300.517(a)(iii), which provide for the recovery of attorneys' fees and costs against a parent and his or her attorney following an IDEA due process hearing.

58. During a September 18, 2018 pre-hearing conference call, the Hearing Officer "reminded the Parents that this is not an appeal of the Section 504 decision, that they agreed with the team's decision to find the Student ineligible under IDEA on August 22, 2016 and that the decision is limited to the information known to the eligibility team when it made the decision."

59. Parents did not withdraw their due process complaint even after Hearing Officer Robinson reminded them that they had agreed with the team's decision to find M.G. ineligible under the IDEA.

60. Attorney Waugh included twenty (20) witnesses on her proposed witness list for the due process hearing and represented to the School Board and hearing officer that each witness was "essential" to her case-in-chief. Attorney Waugh ultimately called nine (9) witnesses.

- 9 -
Case 7:19-cv-00232-EKD   Document 1   Filed 03/12/19   Page 9 of 13   Pageid#: 9

61. Attorney Waugh included two SAT/ACT (college admissions testing) experts on her proposed witness list for the due process hearing, which pertained to a fifth grade student. When asked if Attorney Waugh required the testimony of both, Attorney Waugh responded, "I don't."

62. The six-day hearing began on October 16, 2018. The Parents called nine witnesses and introduced approximately 160 exhibits into evidence. The Parents presented twenty-one hours of testimony.

63. Mrs. Gross testified for several hours at the due process hearing, both as an initial witness and as a rebuttal witness, over the School Board's objection.

64. Dr. Gross did not testify at the hearing nor attend the hearing, despite his presence at the August 22, 2016 IDEA eligibility meeting.

65. Mrs. Gross testified in a manner inconsistent with her testimony during the Section 504 hearing.

66. Testimony elicited during the due process hearing demonstrated that Mrs. Gross influenced or attempted to influence the content of her private evaluator and expert witness's report.

67. Testimony elicited during the due process hearing demonstrated that Mrs. Gross informed a North Cross School administrator that her only unknown financial consideration, with respect to paying private school tuition, was the amount of her own attorneys' fees for which she would be responsible in connection with her litigation against the School Board.

68. Many of the witnesses called by the Parents to testify at the IDEA due process hearing also testified, often about the same topics, at the Section 504 hearing.

69. Testimony duplicative of that elicited during the Section 504 hearing was at times permitted over the School Board's objection.

70. Testimony duplicative of that elicited during the Section 504 hearing was at times permitted despite the fact that the Section 504 hearing transcript had been admitted into evidence on Attorney Waugh's motion.

71. During the due process hearing, Attorney Waugh stated numerous times that her rationale for eliciting certain testimony or presenting certain evidence was to "rebut" testimony elicited at the Section 504 hearing.

72. During the due process hearing, Attorney Waugh devoted hours to authenticating nearly all of Dr. and Mrs. Gross's approximately 160 exhibits. Attorney Waugh engaged in this exercise despite the fact that the Hearing Officer had already admitted those exhibits to which he had not sustained an objection.

73. On December 13, 2018, the Hearing Officer issued a decision in the School Board's favor on all issues.

74. The Hearing Officer found that, "Both Mr. and Mrs. Gross were in agreement with every aspect of the [eligibility] meeting's consensus, as reflected clearly and unequivocally in the written documents concerning the meeting."

75. The Hearing Officer found that, "On August 22, 2018, the Parent filed the instant due process complaint, exactly two years after the date of the IDEA eligibility meeting, attempting to claim that the eligibility team's determination of ineligibility under the IDEA, with which she had clearly and unequivocally agreed in writing, was incorrect. The Parent's contention that she was somehow hoodwinked or misled by the School Board is without merit."

76. The Hearing Officer "found the testimony of the School board personnel credible" as "[t]heir demeanor was open, frank, and forthright."

77. The Hearing Officer was "sympathetic to the School Board's frustration at the time, resources, and energy it has had to expend in opposing the Section 504 and this IDEA proceeding[.]".

78. The Hearing Officer found that the "evidence demonstrates that [Mrs. Gross], not the School Board, acted unreasonably with respect to the Student's educational programming[.]".

79. The School Board was the prevailing party on every issue in the lengthy due process hearing.

80. Dr. and Mrs. Gross's IDEA due process complaint and subsequent cause of action were presented for the improper purpose of attempting to "re-do", "re-try", or "rebut" the Section 504 administrative hearing.

81. Dr. and Mrs. Gross's IDEA due process complaint and subsequent cause of action were presented for the improper purpose of needlessly increasing the cost of litigation.

82. Dr. and Mrs. Gross filed and litigated a cause of action that was frivolous, unreasonable, and without foundation.

83. Attorney Waugh filed a cause of action that was frivolous, unreasonable, and without foundation.

84. Attorney Waugh continued to litigate after this case clearly became frivolous, unreasonable and without foundation.

85. Attorney Waugh initiated and continued to litigate the IDEA due process hearing for the improper purpose of attempting to "re-do", "re-try", or "rebut" the Section 504 administrative hearing.

86. The attorneys' fees, costs, and expenses incurred in defending the IDEA due process hearing were reasonable and are based upon the rate prevailing in the community in which the proceeding arose for the kind and quality of services furnished.

87. The School Board incurred approximately $190,000.00 of reasonable attorneys' fees and costs in defending the claims of Dr. and Mrs. Gross.

88. The School Board is entitled to an award of attorneys' fees, costs, and expenses.

## V. **REQUEST FOR RELIEF**

WHEREFORE, the School Board respectfully requests that this Court:

89. Award the School Board reasonable attorneys' fees, costs, and expenses against Dr. and Mrs. Gross for having to defend against Dr. and Mrs. Gross's claims in the administrative proceeding below;

90. Award the School Board reasonable attorneys' fees, costs, and expenses against Attorney Waugh for having to defend against Dr. and Mrs. Gross's claims in the administrative proceeding below;

91. Award such other relief as the Court deems proper.

March 12, 2019

Respectfully submitted,

THE SCHOOL BOARD OF ROANOKE COUNTY

By Counsel

_____
Patrick T. Andriano (VSB No. 65223)
Reed Smith LLP
Riverfront Plaza – West Tower
901 East Byrd Street, Suite 1900
Richmond, Virginia 23219
Telephone: (804) 344-3400
Facsimile: (804) 344-3410
pandriano@reedsmith.com
*Counsel for Defendant, School Board of Roanoke County*